**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| WOODLANDS AT MONTGOMERY LP, WOODLANDS AT MONTGOMERY GP LLC, KITTLE PROPERTY GROUP, INC., HOUSING AUTHORITY OF SAVANNAH, PAULA WILLIAMS, and HOUSING OPPORTUNITIES UNLIMITED SERVICES ENTERPRISE, INC., | ) Case No. ) ) ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

## COMPLAINT

The United States of America ("United States") alleges as follows:

### NATURE OF ACTION

1. This action is brought by the United States to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601-3631. It is brought on behalf of Lisa Vollmer under 42 U.S.C. § 3612(o).

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred there and because the Defendants reside there.

1

**THE PARTIES AND SUBJECT PROPERTY**

4. The Woodlands at Montgomery ("Woodlands Apartments") is the subject property, located at 227 West Montgomery Cross Road, Savannah, GA 31406.

5. The units at the subject property are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

6. Woodlands at Montgomery LP is the owner of Woodlands Apartments. It is registered as a limited partnership in Georgia.

7. Woodlands at Montgomery GP LLC is the general partner of Woodlands at Montgomery LP. It is registered as a limited liability company in Georgia.

8. Kittle Property Group, Inc. ("KPG") was the property management company at Woodlands Apartments at all relevant times. KPG is incorporated in Georgia. Defendants Woodlands at Montgomery LP and Woodlands at Montgomery GP LLC hired KPG to manage the subject property.

9. Paula Williams was the property manager for Woodlands Apartments and an employee of KPG at all relevant times.

10. The Housing Authority of Savannah is the housing authority that administers Ms. Vollmer's housing choice voucher.

11. Housing Opportunities Unlimited Services Enterprise, Inc. ("HOU") is the entity that facilitated the relocation services described below. HOU is registered as a nonprofit organization in Massachusetts.

**FACTUAL ALLEGATIONS**

12.     Lisa Vollmer is a woman with a disability[1] as defined under the Fair Housing Act. She used a walker for mobility at all times relevant to the complaint. She now uses a wheelchair for mobility at all times. Her disability affects, among other things, her ability to walk, breathe, and climb stairs.

13.     In July 2019, Ms. Vollmer rented a unit at Chatham Apartments, located at 609 Abercorn Street, Savannah, GA 31401. The unit was on the tenth floor of a building that had an elevator.

14.     Ms. Vollmer's unit at Chatham Apartments was subsidized through the Department of Housing and Urban Development ("HUD").

15.     In September 2019, Abercorn Apartments, the owner of Chatham Apartments, alerted HUD that it was selling Chatham Apartments.

16.     As a result, Abercorn Apartments hired Defendant HOU to relocate the residents of Chatham Apartments. Among HOU's responsibilities were to assess each household's needs and any necessary accommodations, assist residents with completing applications, identify an appropriate property for residents, and submit the application information to the new properties for processing. Eventually, HOU identified Woodlands Apartments as the complex to which the Chatham residents would relocate.

17.     As part of the relocation process, Defendant Housing Authority allowed Ms. Vollmer to switch her rental subsidy to the voucher program (formerly called the "Section 8"

---

[1] Throughout this Complaint, the United States uses the term "disability" instead of "handicap." For purposes of the Fair Housing Act, the terms have the same meaning. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.,* 765 F.3d 1277, 1285 n.2 (11th Cir. 2014) (noting that "[d]isability scholars . . . generally prefer the term "disability" to handicap . . . and the Americans with Disabilities Act . . . reflects that preference.*"*)

3

program). This would allow Ms. Vollmer to continue her rental subsidy when she relocated to a new unit.

18. To qualify for the voucher, an individual must provide proof of income. *See* 24 C.F.R 982.551. Ms. Vollmer provided proof to the Housing Authority that she receives Social Security Disability Insurance ("SSDI") to qualify for her voucher.

19. Ms. Vollmer also provided proof of her SSDI income to apply for an apartment at Woodlands Apartments.

20. As part of the voucher process, each head of household is assigned a voucher size based on the number of individuals in the household. *See* 24 C.F.R. 982.402. That voucher size corresponds to how much the voucher is worth. 24 C.F.R. 982.503. Because she lives alone, Ms. Vollmer was given a one-bedroom voucher.

21. On or around July 2, 2020, Ms. Vollmer met in person with a representative of HOU, Jerrie Redding, to begin her application for Woodlands Apartments. Ms. Vollmer used her walker to get to her meeting with Ms. Redding.

22. On July 7, 2020, Ms. Vollmer completed a "Personal Declaration for Section 8 Applicants" to qualify for a voucher. This Housing Authority form includes the question, "are you or anyone in your family a person with disabilities that requires a specific accommodation in order to fully utilize our programs and services?" In response, Ms. Vollmer wrote, "[w]ith my scoliosis it is hard for me to climb stairs or step into a bathtub."

23. Ms. Redding provided the completed application forms, including the "Personal Declaration for Section 8 Applicants," to Woodlands Apartments for processing. The declaration form was also provided to the Housing Authority as part of Ms. Vollmer's voucher application.

Thus, by around July 7, 2020, all Defendants were aware that Ms. Vollmer had a disability that made climbing stairs difficult.

24. On August 7, 2020, Defendant Williams, KPG's property manager for Woodlands Apartments, emailed HOU with unit assignments for the individuals moving to Woodlands Apartments. Fourteen individuals were moving from Chatham Apartments to Woodlands Apartments. All fourteen were assigned units in building seven, six of which were on the first floor. Ms. Vollmer was assigned to Unit 726, a second-floor unit in a building without an elevator. HOU representative Ms. Redding called Ms. Vollmer to provide her unit assignment, and Ms. Vollmer asked if the unit placement could be changed so that she had a first-floor unit because of her disability. Ms. Redding responded that she would check and get back to her.

25. That same day, Ms. Redding called Ms. Williams at Woodlands Apartments to ask whether Ms. Vollmer could be moved to a first-floor unit. Ms. Williams responded that residents could not switch unit assignments.

26. On August 10, 2020, all residents moving from Chatham Apartments to Woodland Apartments signed their leases. Ms. Vollmer saw that she was still assigned to Unit 726 on the second floor. Ms. Redding noticed that a resident without a disability was assigned to Unit 714, a first-floor, one-bedroom unit. She approached that individual at the lease signing to see if he would agree to switch with Ms. Vollmer, and he was willing to do so. However, KPG staff informed Ms. Redding that residents could not switch apartments. Ms. Volmer proceeded to move into Unit 726 in August 2020.

27. On or around October 9, 2020, Ms. Vollmer called Sandy Glicken, the voucher manager at the Housing Authority, to explain her predicament. Ms. Glicken contacted Ms. Williams, the property manager, who responded via email, "If the apartment does not suffice

5

residents are able to start the process of an early termination with a $500 lease break fee after the first 6 months. Residents also have the option to not renew. We accommodated all reasonable request [sic] with the proper documentation . . . please let me know if the resident would like to do an early termination or not renew."

28.     On or around November 25, 2020, Ms. Vollmer texted Ms. Redding to ask if HOU would pay for the transfer to the first-floor unit. Ms. Redding responded that she had notified the Housing Authority about another property, Fellwood III, located at 40 Eagle St, Savannah, Georgia 31415, which had an available accessible unit. Ms. Vollmer declined the offer of Fellwood III because it was too far from her medical providers.

29.     In January 2021, Ms. Vollmer again called Ms. Glicken at the Housing Authority to follow up on her reasonable accommodation request. Ms. Glicken informed Ms. Vollmer that she could be issued a new voucher whenever she found an appropriate unit. Ms. Vollmer asked Ms. Glicken who would pay for her moving costs, and Ms. Glicken told Ms. Vollmer it would be Ms. Vollmer's responsibility.

30.     On January 29, 2021, Ms. Williams at Woodlands Apartments informed Ms. Glicken that a two-bedroom, first-floor unit became available at Woodlands Apartments, but rescinded that offer on February 25, 2021, because the resident failed to vacate the unit.

31.     On March 26, 2021, JCVisions and Associates, Inc., a fair housing organization in Savannah, sent a written reasonable accommodation request to Woodlands Apartments, requesting that Ms. Vollmer be transferred to a first-floor unit and that she not "have to pay anything extra for her disability to be accommodated." Woodlands Apartments did not respond to the request.

32. On May 20, 2021, the Housing Authority was notified that a three-bedroom first-floor unit was becoming available at the subject property. It contacted Ms. Vollmer and requested that she obtain a letter from her medical provider demonstrating a disability-related need for two additional bedrooms, such as needing space for additional medical equipment. Ms. Vollmer refused to do so, stating that she did not want to lie to obtain a three-bedroom unit. The Housing Authority told Ms. Vollmer that if she accepted a larger unit on the first floor, she would be responsible for the additional rent for a two- or three-bedroom unit.

33. On June 18, 2021, Ms. Vollmer was notified of another three-bedroom first-floor unit, but she declined it for the same reasons. In both May and June 2021, the Housing Authority was not willing to grant Ms. Vollmer a larger voucher size as a reasonable accommodation to allow her to access a first-floor unit at Woodlands Apartments, even though the yearly difference in rent would not exceed $3,000.

34. In or around the beginning of July 2021, Ms. Glicken at the Housing Authority contacted Ms. Williams at Woodlands Apartments to revisit swapping units with the tenant residing in Unit 714. Ms. Williams told Ms. Glicken that the resident of Unit 714 was no longer interested in transferring units. Ms. Williams again emphasized that there would be an early termination penalty if Ms. Vollmer wished to terminate her lease when a first-floor unit became available.

35. On July 15, 2021, Ms. Vollmer renewed her lease. She requested that Ms. Williams give her written verification of her pending reasonable accommodation request. Ms. Williams wrote a letter stating:

> Lisa Vollmer is in need of a first floor one- or two-bedroom apartment. Once we have a vacant apartment to accommodate Ms. Vollmer along with the approval from tenant housing case manager on a new rental amount, we will begin the new application process. As a note, tenant will be responsible for an early termination

7

of lease fee of $500 in current apartment and will need to re-apply and pay all applicable fees associated with the new apartment once one comes available.

36. On October 4, 2021, Ms. Vollmer's doctor wrote a reasonable accommodation request letter that was sent to Woodlands Apartments, stating that Ms. Vollmer "is unable to climb stairs due to her lung condition. Please make every effort to give her a first-floor apartment."

37. In December 2021, Ms. Vollmer was prescribed a wheelchair. However, the wheelchair company would not provide the power wheelchair until Ms. Vollmer resided in an accessible unit, because there would be no way to get the wheelchair in and out of the unit.

38. Defendants' failure to accommodate Ms. Vollmer with a first-floor unit forced her to struggle getting up and down the stairs to her unit, limited the times she could leave her home, diminished her quality of life, and exacerbated her physical disability over time.

39. On or around March 16, 2022, a two-bedroom, first-floor apartment became available at Woodlands Apartments. Although it had refused to do so in the past, the Housing Authority agreed to allow Ms. Vollmer to increase her voucher size from one-bedroom to two-bedroom at no additional cost to her as a reasonable accommodation so that she could transfer to the unit.

40. On April 11, 2022, over a year and a half after Ms. Vollmer moved into the inaccessible unit at Woodlands Apartments, she moved to a first-floor unit.

41. Over that 18-month period other first-floor units became available at Woodlands Apartments that Ms. Vollmer was not offered.

## HUD ADMINISTRATIVE PROCESS

42. On or about August 26, 2021, Ms. Vollmer timely filed a housing discrimination complaint with HUD under 42 U.S.C. § 3610(a).

43. In accordance with 42 U.S.C. § 3610, the Secretary of HUD conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report. Based on the information gathered in the investigation, the Secretary, under 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendants violated the Fair Housing Act. Accordingly, on February 21, 2024, the Secretary issued a Charge of Discrimination, in accordance with 42 U.S.C. § 3610(g)(2)(A).

44. On March 13, 2024, the Housing Authority elected to have the charge resolved in a civil action in accordance with 42 U.S.C. § 3612(a).

45. On March 15, 2024, Woodlands at Montgomery LP, Woodlands at Montgomery GP LLC, KPG, and Ms. Williams elected to have the charge resolved in a federal civil action in accordance with 42 U.S.C. § 3612(a).

46. On March 15, 2024, the HUD Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on Ms. Vollmer's complaint.

47. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action in accordance with 42 U.S.C. § 3612(o).

## CLAIM FOR RELIEF

48. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

49. By the actions set forth above, Defendants have:

    a. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2); and

    b. Refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

50. As a result of Defendants' conduct, Ms. Vollmer has been injured, suffered damages, and is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i).

51. Defendants' discriminatory actions were intentional, willful, and taken in reckless disregard of the rights of Ms. Vollmer.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests relief as follows:

1. A declaration that Defendants' actions, policies and practices, as alleged herein, violate the Fair Housing Act;

2. An injunction prohibiting Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from:

    a. Discriminating on the basis of disability, in violation of the Fair Housing Act;

    b. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Ms. Vollmer to the position she would have been in but for the discriminatory conduct; and

    c. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future.

      3.      An award of monetary damages to Ms. Vollmer in accordance with 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

The United States further requests such additional relief as the interests of justice may require.

Dated: April 11, 2024

Respectfully submitted,

MERRICK GARLAND
Attorney General

JILL E. STEINBERG
United States Attorney
Southern District of Georgia

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief
Housing and Civil Enforcement Section

*/s/ O. Woelke Leithart*
WOELKE LEITHART
Idaho Bar No. 9257
Assistant United States Attorney
U.S. Attorney's Office
P.O. Box 8970
Savannah, GA 31412
Phone: (912) 652-4422
Fax: (912) 652-4427
E-mail: woelke.leithart@usdoj.gov

*/s/Mary Rosenberg*
MICHAEL S. MAURER
Deputy Chief
MARY ROSENBERG
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St., NE, Suite 800
Washington, D.C. 20530
Tel: (202) 710-2326
Fax: (202) 514-1116
mary.e.rosenberg@usdoj.gov

Attorneys for Plaintiff
United States for America