UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| LISA VOLLMER, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| | ) Case No. 4:24-cv-00071-RSB-CLR |
| v. | ) |
| | ) |
| WOODLANDS AT MONTGOMERY LP, WOODLANDS AT MONTGOMERY GP LLC, KITTLE PROPERTY GROUP, INC., HOUSING AUTHORITY OF SAVANNAH, PAULA WILLIAMS, and HOUSING OPPORTUNITIES UNLIMITED SERVICES ENTERPRISE, INC., | ) |
| | ) |
| Defendants. | ) |

## CONSENT ORDER AMONG THE UNITED STATES, LISA VOLLMER, AND HOUSING AUTHORITY OF SAVANNAH

### I.       INTRODUCTION

1. On April 11, 2024, the United States commenced this action to enforce provisions of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, on behalf of Plaintiff-Intervenor Lisa Vollmer.

2. The United States alleges that Plaintiff-Intervenor Lisa Vollmer is a person with a disability within the meaning of the FHA as, among other things, she uses a wheelchair for mobility. *See* 42 U.S.C. § 3604(h).

1

3. On June 18, 2024, the Court granted Lisa Vollmer's motion to intervene in this case.

4. Defendant Housing Authority of Savannah ("HAS") administers Ms. Vollmer's housing choice voucher.

5. The United States, Ms. Vollmer, and HAS (collectively, "the Parties") agree that the claims against HAS should be resolved without further proceedings or a trial. HAS expressly denies any liability, wrongdoing, or violation of any law, rule, regulation, or order of any kind. The Parties agree that the payment and provisions provided for herein do not constitute an admission of liability or wrongdoing.

## II.   INJUNCTION AGAINST DISABILITY DISCRIMINATION

6. HAS agrees to comply with the laws that apply to it, including laws related to disability discrimination, and agrees to provide reasonable accommodations and modifications and engage in the interactive process, to the extent it is in an appropriate position to be a decision-maker to do so. HAS agrees and acknowledges that it shall not engage in disability discrimination in violation of the Fair Housing Act.

## III.   MANDATORY EDUCATION AND TRAINING

7. For the purposes of this section, employees of HAS whose duties involve the showing, renting, managing, or marketing of rental housing; responding to requests for reasonable accommodations or modifications; or assisting participants with their subsidy, are considered "Covered Employees."

8. Within ninety (90) days of entry of this Consent Order, the Covered Employees described in paragraph 7 shall attend, at HAS' expense, a fair housing training program that includes the provisions of the FHA against disability discrimination. The training shall be

conducted by a qualified third party, approved in advance by the United States, and unconnected to HAS, its employees, agents, or counsel. The training may be in-person or virtual.

9. Any new Covered Employees hired to work with or for HAS will attend fair housing training consistent with the requirements of paragraph 8 within 60 days of the start of their employment, at HAS' cost.

10. All persons required under to attend fair housing training shall, within 30 days of completing the training, sign an acknowledgement that they have participated in the training and that they understand and acknowledge the duties and responsibilities under the FHA. This shall take the form of Appendix A to this Consent Order and at the end of each reporting period shall be sent to Mary Rosenberg via email at mary.e.rosenberg@usdoj.gov and Woelke Leithart at wleithart@usdoj.gov.

## IV.  NONDISCRIMINATION POLICY

11. Within 30 days of entry of this Consent Order, HAS shall post and prominently display a sign within its offices open to the public and in a prominent location on the premises of rental properties it owns or operates indicating that all units are available rental on a nondiscriminatory basis. An 11-by-14-inch poster that comports with 24 C.F.R. part 110 shall satisfy this requirement. HAS may use HUD Form 928 for this purpose, which is available online at https://www.hud.gov/sites/documents/928.1.PDF.

12. HAS shall ensure that any new advertising for rental units it owns and any new advertising for any housing-related programs it administers, in any media, including newspapers, television, the internet, or social media, any new advertising signs, pamphlets, brochures, rental applications, and other promotional literature includes a fair housing logo, the phrase "Equal Opportunity Housing Provider" and this language:

3

We are an equal opportunity housing provider. We do not discriminate on the basis of race, color, religion, sex, disability, familial status, or national origin.

## V. REASONABLE ACCOMMODATION AND MODIFICATION POLICY

13. HAS shall adopt the Reasonable Accommodation and Modification Policy set forth in Exhibit C to this Consent Order. The effective date of the adoption of the policy by HAS will be the date of entry of this Consent Order.

14. HAS shall keep written records of each reasonable accommodation or modification request. These records shall include: (a) the name, address, and telephone number of the person making the request; (b) the date the request was received; (c) the nature of the request; (d) whether the request was granted or denied; (e) if the request was denied, the reason for the denial; and (f) the date the request was responded to.

## VI. REPORTING AND RECORDKEEPING

15. HAS shall notify and provide documentation to the United States of the following events within 30 days of their occurrence:

   a. Adoption of the Reasonable Accommodation and Modification Policy described in Section V of this Consent Order or the modification of any present policy so as to conform to the requirements of the Reasonable Accommodation and Modification Policy described in Section V of the Consent Order;

   b. Implementation of any change to the Reasonable Accommodation and Modification Policy;

   c. Completion of the initial training for existing employees required under Section III of this Consent Order;

    d.  Posting of the nondiscrimination policy required under Section IV of this Consent Order;

    e.  Denial of a reasonable accommodation or modification request made to HAS, including (a) the name, address, and telephone number of the person making the request; (b) the date the request was received; (c) the nature of the request; (d) the reason for the denial; (e) the date the request was responded to; and (f) the reason for the denial.

    f.  Any written complaint to HAS regarding discrimination based on disability under the FHA, including a copy of the written complaint itself; the name address, telephone number, and email address of the complainant; and, if applicable, information concerning the resolution of the complaint.

16. HAS shall be responsible for the preparation of compliance reports every six months beginning six months from the entry of this Consent Order and continuing every six months thereafter, except that the final report shall be submitted 60 days before the expiration of the Consent Order. The compliance report shall include: (a) copies of any new advertising as identified in paragraph 12 of this Consent Order adopted since the effective date of this Consent Order or the submission of the prior compliance report; and (b) a list of all reasonable accommodation requests submitted to HAS by participants or prospective participants of its housing choice voucher program since the effective date of this Agreement or the submission of the prior compliance report, including the name, address, and telephone number of the person making the request; the date the request was received; the nature of the request; whether the request was granted or denied; if the request was denied, the reason for the denial; and the date the request was responded to.

17. HAS shall preserve all records related to its obligations under this Consent Order. The United States shall be permitted, upon providing reasonable notice to HAS, to inspect and copy at reasonable times any and all records related to HAS' obligations under this Consent Order.

### VII. RELIEF FOR PLAINTIFF-INTERVENOR LISA VOLLMER

18. Within 14 days of entry of this Consent Order, HAS shall pay $17,500 in damages to Lisa Vollmer and attorney's fees to Ms. Vollmer's counsel by delivering Ms. Vollmer's counsel a check for $14,167 payable to Lisa Vollmer, and a check for $3,333 payable to Alison Slagowitz, to Slagowitz Law, P.C.; 5605 Sweetbriar Circle; Savannah, GA 31406.

19. Ms. Vollmer shall execute a release of all claims she may have against HAS through the date of this Consent Order in the form of Appendix B. When Ms. Vollmer's counsel has received the check payable to Ms. Vollmer, and the signed release from Ms. Vollmer, she will deliver the check to Ms. Vollmer and the original, signed release to counsel for HAS within 30 days.

### VIII. JURISDICTION, DURATION, AND SCOPE

20. The parties stipulate, and the Court finds, that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and under 42 U.S.C. § 3612(o).

21. This Consent Order is effective immediately upon its entry by the Court and shall remain in effect for two years from the date of its entry.

22. The Court shall retain jurisdiction over this action to enforce the terms of the Consent Order.

23. Any time limits for performance imposed by this Consent Order may be extended by mutual written agreement of the parties.

24. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution. However, in the event HAS fails to perform in a timely manner any act required by this Consent Order or act in violation of any provision of this Order, the United States may move the Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or nonperformance of certain acts and an award of damages, costs, and reasonable attorneys' fees that may have been occasioned by HAS' violation or failure to perform.

25. The United States may take steps to monitor HAS' compliance with this Consent Order, including conducting fair housing tests at rental housing owned or managed or programs overseen by HAS.

26. HAS' obligations under this Consent Order shall extend to all rental housing it owns or manages, in whole or in part.

27. If HAS acquires a direct or indirect management or ownership interest in any residential rental property at which it exercises authority, that property shall become subject to the applicable provisions of this Consent Order. Within 30 days of acquiring that interest, HAS shall notify counsel for the United States of the nature of the controlling interest in the dwelling or property, the address of the property, and the number of individual dwelling units at the property. HAS shall further provide a copy of the documents memorializing the transfer in interest.

28. If HAS sells or otherwise relinquishes its interest in any property subject to this Consent Order to a bona fide, independent, third-party in an arms-length transaction, that property shall cease to be subject to this Consent Order. For purposes of this paragraph, a "bona

fide, independent, third-party" is one in which neither HAS nor its officers, members, executives, managers, partners, employees, subsidiaries, affiliates, or agents has any current or past financial, contractual, personal, or familial relationship.

29. If HAS maintains its obligations under this Consent Order have terminated or changed because it has sold or transferred its interest in any property subject to this Consent Order to a bona-fide third party in an arms-length transaction, HAS shall inform the United States within 30 days of the transaction and provide the date of the sale or transfer, copies of the sale or transfer documents, and the name(s) and contact information for the transferee.

30. If any transfer of interest in any property subject to this Consent Order is not an arms-length transaction, HAS shall remain jointly and severally liable, along with the transferee, for any violations of this Consent Order.

## IX.   COSTS OF LITIGATION

31. Except as provided for in Paragraph 18 and 24, all parties shall be responsible for their own attorneys' fees and costs associated with this action.

## X.   TERMINATION OF LITIGATION HOLD

32. The parties agree that, as of the effective date of this Consent Order, litigation is still reasonably foreseeable concerning the matters described in the United States' Complaint as to the remaining Defendants. To the extent that HAS previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, it shall maintain such a litigation hold until the above-captioned matter is fully resolved as to all Defendants. Nothing in this paragraph relieves any of the parties of any other obligations imposed by this Consent Order.

**IT IS SO ORDERED:**

**SO ORDERED**, this 24th day of February, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

**FOR THE UNITED STATES OF AMERICA:**

Dated: February 12, 2025

| | |
|---|---|
| TARA M. LYONS<br>Acting United States Attorney | KATHLEEN WOLFE<br>Deputy Assistant Attorney General<br>Civil Rights Division |
| */s/* Woelke Leithart<br>WOELKE LEITHART<br>Idaho Bar No. 9257<br>Assistant United States Attorney<br>United States Attorney's Office<br>Post Office Box 8970<br>Savannah, Georgia 31412<br>Telephone: (912) 652-4422<br>E-mail: Woelke.Leithart@usdoj.gov | CARRIE PAGNUCCO<br>Chief<br>Housing and Civil Enforcement Section<br><br>*/s/* Mary Rosenberg<br>MICHAEL S. MAURER<br>Deputy Chief<br>MARY ROSENBERG<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>4 Constitution Square<br>150 M St., NE, Suite 800<br>Washington, D.C. 20530<br>Tel: (202) 710-2326<br>Fax: (202) 514-1116<br>mary.e.rosenberg@usdoj.gov |

9

**FOR PLAINTIFF-INTERVENOR LISA VOLLMER:**

Dated: February 12, 2025

*/s/ Alison Slagowitz*
ALISON SLAGOWITZ
GA Bar No. 401668
SLAGOWITZ LAW, P.C.
5605 Sweetbriar Circle
Savannah, Georgia 31406

**FOR DEFENDANT HOUSING AUTHORITY OF SAVANNAH:**

Dated: February 12, 2025

  */s/ Dana F. Braun*
DANA F. BRAUN
State Bar No. 078512
PHILIP M. THOMPSON
State Bar No. 963572
Attorneys for Defendant
Housing Authority of Savannah

# APPENDIX A

## CERTIFICATION AND ACKNOWLEDGMENT

I certify that on _____ , 20_, I received _ _ __ minutes of training on the requirements of the federal Fair Housing Act. I understand and acknowledge my duties and responsibilities under the federal Fair Housing Act.

_____
Signature

_____
Name

_____
Job Title/Position

_____
Date

## **APPENDIX B**

### **RELEASE OF CLAIMS**

In consideration of the Consent Order among the United States, Lisa Vollmer, and the Housing Authority of Savannah, entered in *United States v. Woodlands at Montgomery LP, et al.,* No. 24-cv-00071-RSB-CLR (S.D. Ga.) ("the Civil Action"), and HAS' payment to me of Fourteen Thousand One Hundred Sixty Seven Dollars ($14,167.00) and HAS' payment of my attorney's fees in the amount of Three Thousand Three Hundred Thirty-Three Dollars ($3,333.00), I, Lisa Vollmer, hereby release HAS, its affiliated or related entities, and its employees, from any and all liability for any claims, legal or equitable, I may have against it arising out of the issues alleged in the above-referenced action through the date of this release.

I warrant that no promise or inducement has been offered by the party being released, except as herein set forth and set forth in the Consent Order; that this Release is executed without reliance upon any statement or representation by the party released or its representatives; that the I am of legal age, am legally competent to execute this Release, and accept full responsibility for it.

I agree, as further consideration and inducement for this compromise settlement, that the settlement and release shall apply to all unknown and unanticipated injuries and damages resulting from the allegations I have made or could have made in the Civil Action against HAS.

I warrant and represent that no other person, firm, hospital, corporation or government agency/entity that has made any payments for any medical care that I have received or government agency/entity under whose program I may have received medical care is entitled to any claim whatsoever growing out of the events described in the Civil Action, and that I will indemnify and hold harmless the party released from any and all claims which might arise from the aforesaid

event. This agreement to indemnify includes, but is not limited to, any claims that might be made against the party released herein through subrogation claims or assignments asserted by entities which have provided medical benefits to me. This agreement to indemnify is intended to apply, even though the party released may be alleged, or found, to have been the sole, negligent cause of the incident and any injuries or damages resulting from it.

    I hereby acknowledge that I have read and understood this Release and executed it freely and voluntarily with full knowledge of its legal consequences.

_____

Lisa Vollmer

_____

Date

# APPENDIX C

## HOUSING AUTHORITY OF SAVANNAH'S REASONABLE ACCOMMODATION AND MODIFICATION POLICY

1.  It shall be the policy of Housing Authority of Savannah ("HAS") to make or permit requested reasonable accommodations and/or modifications so that all participants shall have an equal opportunity to use and enjoy HAS's housing programs.

2.  The following definition of "reasonable accommodation" will be added to the Admission and Continued Occupancy Policy (the public housing policy) and to the Administrative Plan (the housing choice voucher policy): A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces, unless providing it would be an undue financial and administrative burden or a fundamental alteration of HAS's housing programs

3.  The following definition of "reasonable modification" will be added to the Admission and Continued Occupancy Policy and to the Administrative Plan: A "reasonable modification" is any change to the public or common use areas of a building or any change to a dwelling unit necessary to afford a person with a disability full use and enjoyment of the premises, unless providing it would be an undue financial and administrative burden.

4.  HAS shall include in its Admission and Continued Occupancy Policy and in its Administrative Plan language identifying the title(s) of person(s) for participants and applicants to request a reasonable accommodation on all certification and application packages provided to participants and applicants.

5.  A sign shall be placed in the management office of any HAS covered properties or any HAS office open to the public indicating how requests for reasonable accommodations and

modifications should be made. The sign shall read, "It shall be the policy of HAS to make or permit reasonable accommodations or modifications so HAS participants with disabilities can have an equal opportunity to use and enjoy housing. If you need a reasonable accommodation or modification, contact [the title(s) of the person(s)]."

6. Upon receipt of a request for a reasonable accommodation or modification in writing or orally from a requesting participant or prospective participant (the "requestor"), the request shall be forwarded to the Director of Property Management, if involves a public housing resident or applicant, or to the Director of Assisted Housing Programs, if a housing choice voucher recipient or applicant. If the request is oral, it shall be documented by the individual who receives the request identifying the requestor's name, address, and date of request, detailing the reasonable accommodation or modification requested, and indicating to whom the request was made.

7. If a disability is not obvious or known, HAS may require proof that the requestor has a disability, including asking the requestor to provide written verification from a knowledgeable professional that the requestor has a disability, but shall not require more specific information about the nature or extent of the disability than necessary to assess the request.

8. If the need for a requested accommodation or modification is not obvious or known, HAS may ask the requestor how the requested accommodation or modification is necessary to accommodate the individual's disability. HAS may ask the requestor to provide written verification from a knowledgeable professional about how the requested accommodation or modification is necessary to accommodate the requestor's disability.

9. HAS shall grant a request for a reasonable accommodation or modification relating to the disability unless doing so would impose an undue financial and administrative burden or would fundamentally alter the nature of the applicable program.

10. All reasonable accommodation or modification requests shall be acknowledged as being received, in writing, within seven (7) days of receipt.

11. HAS's final decision on a request for a reasonable accommodation or modification shall be delivered to the requestor in writing as soon as is practical but, in any event, no later than ten (10) business days after actual receipt of the request and after all necessary requested additional documentation is received.

12. If a modification request is granted, the approval will identify whether HAS or the requestor will be responsible for the costs of any such modification.

13. If an accommodation request is granted, the resident will not be responsible for any associated cost or additional fee.

14. If an accommodation or modification request is denied, the requestor shall be provided with the reason for the denial in writing. If the request is denied or granted in part, the requestor shall have the right to request a conference within seven (7) days of actual receipt of the denial to discuss the reasons for the denial and, if requestor in fact has a mental or physical impairment that significantly limits one or more major life activities discuss possible alternative accommodations or modifications that may address the requestor's disability-related needs without causing a fundamental alteration or imposing an undue financial and administrative burden. The notice of the denial of the reasonable accommodation or modification shall alert the requestor to their right to a conference to discuss alternative accommodations.

15. If HAS needs further information to make a decision on an accommodation or modification request, it shall notify the requestor what additional information is needed in its notice of denial. If HAS does not receive the requested information within twenty (20) business days, it shall notify the requestor that the request is denied due to lack of information. Notwithstanding this notice, should the requestor provide the requested information at any time after the twenty (20) business days, HAS shall consider the request.

16. If the requestor believes that a request has been denied unlawfully or that the response has been delayed unreasonably, the requestor may in the event the requestor is a participant or applicant in HAS' Housing Choice Voucher program, request an appeal hearing with HAS pursuant to Chapter 16 of HAS' Administrative Plan for the Housing Choice Voucher Program or if the requestor is an applicant or resident under HAS' public housing program, request a grievance hearing pursuant to Section IV of Exhibit 14-1 of HAS' Admission and Continued Occupancy Policy. Requestor may also or instead file a complaint with the U.S. Department of Housing and Urban Development, https://www.hud.gov/fairhousing/fileacomplaint, and the U.S. Department of Justice, Civil Rights Division, https://civilrights.justice.gov/